Marian F. Harrison
US Bankruptcy Judge

Dated: 02/21/13



# UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SEVENTH AVENUE PROPERTIES, ) | CASE NO. 312-08678 |
| A TENNESSEE GENERAL ) | |
| PARTNERSHIP, ) | CHAPTER 7 |
| ) | |
| Alleged Debtor. ) | INVOLUNTARY PETITION |
| ) | |
| ) | JUDGE MARIAN F. HARRISON |
| ) | |

_____

## MEMORANDUM OPINION
_____

This matter is before the Court upon the alleged debtor's opposition to the petitioning creditors'[1] involuntary Chapter 7 petition. For the following reasons, which represent the Court's findings of fact and conclusions of law, pursuant to Fed. R. Bankr. P. 7052, and made applicable by Fed. R. Bankr. P. 9014(c), the Court finds that the order for relief should be entered.

---

[1] The petitioning creditors are Martha Thetford, William B. Thetford, and Tommy Graham. While these three petitioning creditors were listed, there was no proof regarding Mr. Graham's claim presented at the hearing. The petitioning creditors still qualify to bring this involuntary petition pursuant to 11 U.S.C. § 303(b)(2).

## I. FINDINGS OF FACT

The alleged debtor is a general partnership that owns investment properties. Originally, the alleged debtor was a limited partnership formed by the father of the current general partners. When the father died in 1992, the partnership was divided equally between his four sons. The current owners[2] borrowed $100,000 from their mother, Teresa Peterson, to buy out the fourth son, distributing his ownership equally to each remaining son. The alleged debtor was then converted to a general partnership in 1999. The alleged debtor has made monthly interest payments on the mother's demand note, and the principle balance is approximately $50,000.

Around 1998, the alleged debtor sold a property which resulted in net proceeds to the partnership of approximately $1,289,000. Eric agreed to manage the partnership, including this substantial amount of cash, and the other two brothers agreed to the arrangement. The partners did not hold regular partnership meetings, and there were no meetings from 2007 through 2012.

On April 12, 2012, Eric contacted Trent asking if he had access to $20,000. When Trent asked why the money was needed, Eric told him that the alleged debtor's property in Florida was being sold for failure to pay property taxes for 2008 through 2010. Trent paid

---

[2]Eric S. Peterson (hereinafter "Eric"), Trent C. Peterson (hereinafter "Trent"), and Tevin T. Peterson (hereinafter "Tevin").

off the taxes, and the alleged debtor currently owes him between $26,000 and $27,000. Trent was not given a note for this debt and is not receiving monthly payments or interest.

Trent testified that this was the first time Eric indicated that the alleged debtor was having financial difficulties. When the other two brothers asked what had happened to the $1,289,000, Eric told them that it had been invested into his personal company. In addition to the taxes, it appears that homeowner association fees have not been paid on the Florida property and on a property located in Green Hills.

Based on these facts, Trent, Tevin, and the alleged debtor filed a complaint against Eric in the Chancery Court of Davidson County on April 26, 2012. In the complaint, the parties sought the following relief: (1) that Eric be required to give a complete accounting of all transactions; (2) that a restraining order be issued prohibiting Eric from continuing to conduct any partnership business; (3) that Eric be expelled from the partnership and that all his partnership interests be distributed equally to the remaining partners; (4) that Eric be required to pay back all monies taken illegally from the partnership; and (5) that Eric be required to pay attorney fees and expenses.

Thereafter, on September 21, 2012, the petitioning creditors filed this involuntary Chapter 7 petition. Petitioning creditors Martha and William Thetford loaned money to the

3 - U.S. Bankruptcy Court, M.D. Tenn.

alleged debtor through Eric, whom they knew through a friend. They did not ask how the payments would be used. Mr. Thetford loaned the alleged debtor $75,000 on July 27, 2009, and holds a demand note for $75,000 with 9.75% interest executed on behalf of the alleged debtor and signed by Eric.[3] Mr. Thetford testified that he stopped receiving monthly interest payments in January 2012 and contacted Eric demanding the unpaid interest. He did not make a demand on the principle.

Mrs. Thetford loaned the alleged debtor $50,000 at 8.5% in 2004 and $75,000 at 9.75% in 2009.[4] Mrs. Thetford testified that the alleged debtor was often late in making interest payments. The last payment she received was before January 2012. Mrs. Thetford testified that she has asked for the $50,000 principle over the past two years through e-mails and telephone calls to Eric. Trent testified that he knew nothing about these loans and that Eric had no authority to borrow money on behalf of the alleged debtor. Trent was also unaware that Eric claimed a 59% interest in the alleged debtor, as set forth in the alleged debtor's 2009 tax return. Trent could not point to any written document indicating that Eric, as a general partner, did not have the authority to borrow on behalf of the alleged debtor.

---

[3]Originally, Mr. Thetford loaned the alleged debtor $25,000 on October 26, 2007. The demand note, dated July 27, 2009, replaced the $25,000 note and increased the principal to $75,000. The 2009 note provided for monthly interest payments.

[4]Originally, Mrs. Thetford loaned the alleged debtor $25,000 on October 26, 2007. The demand note, dated July 15, 2009, replaced the $25,000 note and increased the principal to $75,000. The 2009 note provided for monthly interest payments.

## II. DISCUSSION

### A. FED. R. BANKR. P. 1013(b)

The alleged debtor did not file its answer ***until the evening before the hearing on the involuntary petition***. At the hearing, the petitioning creditors moved for an order of relief based on the alleged debtor's failure to file a timely answer. The Court reserved ruling on this issue and allowed proof to be presented. The Court now finds that the petitioning creditors' oral motion for an order of relief is well taken in light of the alleged debtor's failure to respond timely to the involuntary petition.

Pursuant to 11 U.S.C. § 303(h), if an involuntary petition "is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed." The time for responding to an involuntary petition is 21 days after service of the summons. Fed. R. Bankr. P. 1011(b). The mandate of 11 U.S.C. § 303(h) is reiterated by Fed. R. Bankr. P. 1013(b), which also provides that "[i]f no pleading or other defense to a petition is filed within the time provided . . ., the court, on the next day, or as soon thereafter as practicable, shall enter an order for the relief requested in the petition."

Thus, the statutory scheme contemplates that an order of relief will be entered if the alleged debtor does not file a timely response. ***See Dahl v. Key (In re Key),*** 209 B.R. 737,

739 (B.A.P. 10th Cir. 1997) (because alleged debtor did not respond or answer timely, bankruptcy court obligated to enter order of relief); ***Saxena v. Nabilsi (In re Nabilsi),*** No. CC-09-1207-MkJaD, 2010 WL 6259980, at *10 (B.A.P. 9th Cir. Nov. 16, 2010) (bankruptcy court should not have dismissed petition on merits where alleged debtor never filed a written response); ***In re Rebeor,*** 93 B.R. 16, 22 (Bankr. N.D.N.Y. 1988) ("[a]bsent compliance with Bankr. R. 1011(b) and (c), the Court was obligated, by virtue of Code § 303(h), to enter a default judgment in the instant involuntary proceeding"). ***But see In re Hatfield,*** No. C-07-3715 MMC, 2008 WL 906505, *4 (N.D. Cal. March 31, 2008) (bankruptcy court not required to enter order of relief against alleged debtor for failure to file a timely answer where petitioning creditors did not seek such an order).

In the present case, the involuntary petition was filed on September 21, 2012, the summons was issued on September 24, 2012, and the certificate of service indicates that notice was served by U.S. mail on September 27, 2012. On October 16, 2012, the alleged debtor filed a motion for more definite statement, which was denied, and such motion cannot be construed as an answer to the involuntary petition. The motion stated that the alleged debtor "needs additional information to properly respond to this involuntary petition." The order setting the hearing on the contested involuntary petition was entered on November 5, 2012, and still, the alleged debtor did not file an answer to the involuntary petition until Sunday, December 2, 2012, at 5:41 p.m., for the hearing that was set for Monday, December 3, 2012, at 1:00 p.m.

Based on the applicable law and the procedural history of this case, the Court finds that the order for relief must be entered.

### B. 11 U.S.C. § 303

Even if this Court did not believe that an order of relief is mandated by the alleged debtor's failure to timely respond to the involuntary petition, it would enter the order of relief based on the proof presented at the hearing.

An order for relief under 11 U.S.C. § 303 requires a determination that the alleged debtor is "generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1). It is the petitioning creditors' burden to establish a prima facie case that there is no bona fide dispute regarding the debts owed to them. *In re AMC Investors, LLC,* 406 B.R. 478, 484 (Bankr. D. Delaware 2009). The petitioning creditors also have the burden of showing that the alleged debtor is generally not paying its debts when due under § 303(h)(1). *In re Caucus Distrib., Inc.,* 83 B.R. 921, 931 (Bankr. E.D. Va. 1988).

### 1. Bona Fide Dispute

Based on the proof, as discussed below, the Court finds that the petitioning creditors have met their burden by showing that there is no bona fide dispute regarding the validity of their unpaid debts.

The term "bona fide dispute" is not defined in the Bankruptcy Code, however, it is generally agreed that "[a] claim is subject to a bona fide dispute 'if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts.'" *Mktg. & Creative Solutions, Inc. v. Scripps Howard Broad. Co. (In re Mktg. & Creative Solutions, Inc.),* 338 B.R. 300, 305 (B.A.P. 6th Cir. 2006) (citation omitted). A petitioning creditor is disqualified if there is a legitimate basis (factual or legal) for the alleged debtor not to be paying the debt. *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.),* 486 F.3d 940, 945 (6th Cir. 2007) (citation omitted). In making this determination, the Court is not to "resolve any genuine issues of fact or law, . . . only determine whether such issues exist." *In re Soderberg & Schafer CPAS, LLC,* 441 B.R. 262, 264 (Bankr. N.D. Ohio 2010) (citation omitted).

As stated earlier, the petitioning creditors must establish, by a preponderance of the evidence that a bona fide dispute does not exist. Once this is established, the burden shifts

to the alleged debtor to show otherwise. *In re Mktg. & Creative Solutions, Inc.,* 338 B.R. at 305.

Tennessee partnership law governs whether Eric had the authority to enter into loan agreements with the petitioning creditors. Pursuant to T.C.A. § 61-1-301(1):

> Each partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority.

The proof established that under Tennessee law, Eric did have the authority to act on behalf of the alleged debtor. Eric was a general partner of the alleged debtor, and in fact, the other two general partners had previously agreed to allow him to run the day-to-day operations of the partnership. When Eric borrowed funds from the Thetfords on behalf of the alleged debtor, it may not have been in the ordinary course of the business, but it was business carried on by the partnership. The testimony showed that the partnership previously borrowed funds from the general partners' mother, and this loan is still being paid. The Thetfords never received any notification that Eric did not have authority to act on behalf of the partnership, and the Thetfords testified that they never questioned Eric's authority to act on behalf of the partnership. This proof is sufficient for the Court to find that the petitioning

creditors have established a prima facie case that there is no bona fide dispute regarding the legitimacy of these debts.

The burden then shifted to the alleged debtor to show otherwise, which it did not do. The alleged debtor did not present any credible proof to rebut the petitioning creditors' proof that Eric had authority to borrow money on behalf of the partnership under Tennessee law. Accordingly, the Court finds that, for the limited purpose of determining the Thetfords' petitioning creditor status, the petitioning creditors have established a prima facie case that there is not a bona fide dispute regarding the legitimacy of these debts and that the alleged debtor has not presented any proof that would refute this conclusion.

### 2. Paying Debts as Due

The petitioning creditors have also met their burden of showing that the alleged debtor is not paying its debts as they become due.

Although the Bankruptcy Code does not set forth the standard for determining when an entity is not paying its debts as they come due, most courts agree that "[a] finding that a debtor is generally not paying its debts 'requires a more general showing of the debtor's financial condition and debt structure than merely establishing the existence of a few unpaid debts.'" *Liberty Tool, & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.),* 277 F.3d 1057, 1072 (9th Cir. 2002) (citation omitted). Accordingly, the inquiry "requires

a careful balancing of both the number and amount of the unpaid debts, in proportional terms, viewed in the light of the alleged debtor's total financial picture." *Crown Heights Jewish Cmty. Council, Inc. v. Fischer (In re Fischer)*, 202 B.R. 341, 350 (E.D.N.Y. 1996). Relevant factors to consider include:

> (1) the timeliness of payments on past due obligations;
>
> (2) the amount of debts long overdue;
>
> (3) the length of time during which the debtor has been unable to meet large debts;
>
> (4) any reduction in the debtor's assets; and
>
> (5) the debtor's deficit [financial] situation.

*In re Knoth*, 168 B.R. 311, 317 (Bankr. D.S.C. 1994) (citations omitted). Other courts have focused on "(1) the number of debts; (2) the amount of delinquency; (3) the materiality of nonpayment; and (4) the nature of the debtor's conduct of its financial affairs." *In re J.B. Lovell Corp.*, 80 B.R. 254, 255 (Bankr. N.D. Ga. 1987) (citation omitted). "No one factor is necessarily determinative." *In re CLE Corp.*, 59 B.R. 579, 586 (Bankr. N.D. Ga. 1986).

In the present case, the proof showed that the alleged debtor has not made any payments to Mr. and Mrs. Thetford since before January 2012. The property in Florida was almost lost due to unpaid property taxes for 2008 through 2010, and these taxes were paid by an insider who has not been reimbursed. In addition, the complaint filed in Chancery Court indicates that homeowner association fees are past due on at least two properties

11 - U.S. Bankruptcy Court, M.D. Tenn.

owned by the alleged debtor. Moreover, the testimony indicates that the alleged debtor has no remaining liquid assets to pay any past due or current amounts owed. As testified by Trent and set forth in the Chancery Court complaint, approximately $1,289,000 has dissipated. Finally, while Eric may no longer be involved with the alleged debtor, he was allowed to control the operation of the alleged debtor for many years without any monitoring or input by the other general partners. While unfortunate, the facts indicate that bankruptcy is the best way to sort out this bad situation and ensure that all creditors are paid. Accordingly, the Court finds that the petitioning creditors have shown that the alleged debtor is not paying its debts as they become due, and the alleged debtor did not present any evidence that would rebut this finding.

### III. CONCLUSION

For the reasons discussed above, the Court finds that the petitioning creditors' petition for an order of relief should be granted.

**An appropriate order will enter.**

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.